NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ROBYN N. PULLIO
ALEXANDRA M. MICHAEL
Trial Attorneys
United States Department of Justice
 300 N. Los Angeles Street, Suite 2001
 Los Angeles, California 90012
 Telephone: (202) 365-6897 (Pullio)
     (202) 913-4777 (Michael)
 E-mail: Robyn.Pullio@usdoj.gov
    Alexandra.Michael@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>     v.<br><br>NAJIB JABBOUR,<br><br>    Defendant. | No. CR 19-00209-JAK-2<br><br>PLEA AGREEMENT FOR DEFENDANT<br>NAJIB JABBOUR |

  1. This constitutes the plea agreement between NAJIB JABBOUR ("defendant") and the United States Attorney's Office for the Central District of California and the Fraud Section of the Criminal Division of the United States Department of Justice (collectively, the "United States") in the above-captioned case.  This agreement is limited to the United States and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

**DEFENDANT'S OBLIGATIONS**

  2. Defendant agrees to:

a.    At the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to Count One of the indictment in <u>United States v. Najib Jabbour</u>, CR No. 19-00209-JAK-2, which charges defendant with one count of conspiracy to pay illegal remunerations, specifically kickbacks and bribes, for health care related purchases in connection with a Federal health care program, in violation of Title 18, United States Code, Section 371.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the United States.

h.    Make restitution at or before the time of sentencing, and] not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

i.    Defendant understands and acknowledges that as a

2

result of pleading guilty pursuant to this agreement, defendant will be excluded from Medicare, Medicaid, and all Federal health care programs.  Defendant agrees to complete and execute all necessary documents provided by the United States Department of Health and Human Services, or any other department or agency of the federal government, to effectuate this exclusion within 60 days of receiving the documents.  This exclusion will not affect defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

3.   Defendant further agrees:

a.   Truthfully to disclose to law enforcement officials, at a date and time to be set by the United States, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the illegal activity to which defendant is pleading guilty, and to forfeit all right, title, and interest in and to such items, including but not limited to $3,430,287.22 in U.S. currency seized on or about April 9, 2019 (the "Forfeitable Assets"), as follows:

i.   $29,317.13 seized from JP Morgan Chase Bank ("JPMC") account number XXXXX6327 ("Pro-Fit Account") held in the name of Pro-Fit Solutions, Inc. ("Pro-Fit");

ii.   $64,080.94 seized from JPMC account number XXXXX6657 ("Optimal Account") held in the name of Optimal Med, LLC ("Optimal Med");

iii. $72,401.11 seized from JPMC account number XXXXX8595 ("Advanced Orthotics Account") held in the name of Advanced

Orthotics, Inc.;

        iv.   $85,746.73 seized from JPMC account number XXXXX5788 ("Flash Medical Account") held in the name of Medisphere, Inc., dba Flash Medical ("Flash Medical");

        v.   $181,641.36 seized from JPMC account number XXXXX4807 ("JPMC Leanne/Darin Flashberg 4807 Account") held in the name of Leanne Flashberg or Darin M. Flashberg;

        vi.   $312,150.96 seized from JPMC account number XXXXX8995 ("Qual Med Account") held in the name of Qual Med, LLC ("Qual Med");

        vii. $215,000.00 seized from JPMC account number XXXXX6766 ("DR Diagnostic Account") held in the name of DR Diagnostic Solutions LLC ("DR");

        viii. $600,688.10 seized from JPMC account number XXXXX2125 ("EZ Fit Account"), held in the name of EZ Fit Medical Group, Inc. ("EZ Fit");

        ix.   $1,355,792.81 seized from LPL Financial Account Number XXXX-7064 ("LPLF 7064 Account"), held in the name of Darin Flashberg;

        x.   $57,805.50 seized from LPL Financial Account number XXXX-3925 ("LPLF 3925 Account"), held in the name of Darin Flashberg;

        xi.   $350,000.00 seized from LPL Financial account number XXXX-0448 ("LPLF 0448 Account"), held in the name of Darin Flashberg;

        xii. $105,662.58 seized from Wells Fargo Bank account number XXXX-5197 ("Wells Fargo Darin Flashberg 5197 Account"), in the name of Darin Flashberg.

        b.   To the Court's entry of an order of forfeiture at or

before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.    To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.    Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.    Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.    Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.    To prevent the transfer, sale, destruction, or loss of the Forfeitable Assets to the extent defendant has the ability to do so.

h.    To fill out and deliver to the United States a completed financial statement listing defendant's assets on a form provided by the United States.

i.    That forfeiture of the Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.  However,

the United States will make the following recommendation to the Department of Justice: Following the entry of a civil consent judgment of forfeiture or a final order of criminal forfeiture against the Forfeitable Assets, the United States will recommend to the Department of Justice that the restoration process be applied with respect to the $3,430,287.22 in U.S. currency seized on or about April 9, 2019, from defendant (as set forth in paragraphs 3(a)(i)-(xii)), and that the forfeited $3,430,287.22 be applied to any restitution order entered against defendant.

j.    With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

4.    Defendant further agrees to cooperate fully with the United States, the Federal Bureau of Investigation ("FBI"), the U.S. Department of Health and Human Services, Office of the Inspector

General ("HHS-OIG"), the U.S. Department of Veterans Affairs, Office of Inspector General ("VA-OIG"), and, as directed by the United States, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the United States or compelled by subpoena or court order.

c.   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the United States, or its designee, inquires.

5.   For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated September 13, 2019; and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

<u>THE UNITED STATES' OBLIGATIONS</u>

6.   The United States agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the

remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 21 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

7.   The United States further agrees:

a.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the United States, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the United States, any Cooperation Information. Defendant agrees, however, that the United States may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any

purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b.    Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.    In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.    If the United States determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and

to recommend a term of imprisonment within this reduced range.

## DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

8. Defendant understands the following:

a. Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b. Nothing in this agreement requires the United States or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c. Defendant cannot withdraw defendant's guilty plea if the United States does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the United States makes such a motion and the Court does not grant it or if the Court grants such a United States motion but elects to sentence above the reduced range.

d. At this time the United States makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance. The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the United States.

e. The United States' determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

//

<u>NATURE OF THE OFFENSE</u>

9.   Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, conspiracy to pay illegal remunerations, in violation of Title 18, United States Code, Section 371, the following must be true:

a.   First, between in or around April 2018 and in or around March 2019, there was an agreement between two or more persons to commit the crime of paying illegal remunerations, specifically kickbacks and bribes, for health care related purchases in connection with a Federal health care program, namely, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B);

b.   Second, defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c.   Third, that one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

10.   Defendant understands that the elements of the crime of paying illegal remunerations in connection with a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B), has the following elements:

a.   First, the defendant offered or paid remuneration to a person;

b.   Second, the defendant offered or paid the remuneration to induce the person to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or part under a Federal health care program; and

c.   Third, the defendant offered or made the payment knowingly and willfully.

## PENALTIES AND RESTITUTION

11.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the United States' compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $1,090,500.30, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

13.   Defendant understands that supervised release is a period

of time following imprisonment during which defendant will be subject
to various restrictions and requirements.  Defendant understands that
if defendant violates one or more of the conditions of any supervised
release imposed, defendant may be returned to prison for all or part
of the term of supervised release authorized by statute for the
offense that resulted in the term of supervised release, which could
result in defendant serving a total term of imprisonment greater than
the statutory maximum stated above.

14.  Defendant understands that, by pleading guilty, defendant
may be giving up valuable government benefits and valuable civic
rights, such as the right to vote, the right to possess a firearm,
the right to hold office, and the right to serve on a jury.
Defendant understands that once the court accepts defendant's guilty
plea, it will be a federal felony for defendant to possess a firearm
or ammunition.  Defendant understands that the conviction in this
case may also subject defendant to various other collateral
consequences, including but not limited to revocation of probation,
parole, or supervised release in another case and suspension or
revocation of a professional license.  Defendant understands that
unanticipated collateral consequences will not serve as grounds to
withdraw defendant's guilty plea.

15.  Defendant understands that, if defendant is not a United
States citizen, the felony conviction in this case may subject
defendant to: removal, also known as deportation, which may, under
some circumstances, be mandatory; denial of citizenship; and denial
of admission to the United States in the future.  The court cannot,
and defendant's attorney also may not be able to, advise defendant
fully regarding the immigration consequences of the felony conviction

in this case.   Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

16.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.   Defendant and the United States agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

At all times relevant to this plea agreement, the Medicare program ("Medicare") was a federal health care program as defined by Title 42, United States Code, Section 1320a-7b(b), and a health care benefit program as defined by Title 18, United States Code, Section 24(b).   Medicare programs covering different types of benefits were separated into different programs "parts."   Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices.   Orthotic devices were a type of DME that included rigid and semi-rigid devices such as ankle braces, knee braces, back braces, elbow braces, shoulder braces, wrist braces, and hand braces (collectively "braces").   A claim for DME submitted to Medicare qualified for reimbursement only if the DME was medically necessary to the treatment of the beneficiary's illness or injury, and the DME was actually provided to the Medicare beneficiary.   Medicare

prohibited the submission of claims that were procured through the payment of illegal kickbacks and bribes.

Additionally, at all times relevant to this plea agreement, defendant co-owned and co-operated EZ Fit Medical Group, Inc. ("EZ Fit"), a DME company located at 466 W. Arrow Highway, Suite H, San Dimas, California.  As of at least approximately April 4, 2018, defendant was the 100% named owner and operator of EZ Fit on documents filed with Medicare and the California Secretary of State. Notwithstanding defendant's 100% named ownership of EZ Fit, defendant and co-defendant Darin Flashberg ("Flashberg") actually operated EZ Fit as partners, and split the profits of the business evenly with 50% of the profits going to defendant and 50% of the profits going to co-defendant Flashberg.  Defendant and co-defendant Flashberg intentionally omitted co-defendant Flashberg's affiliation with EZ Fit in furtherance of allowing EZ Fit to bill claims to Medicare without issue because, among other reasons, the Centers for Medicare and Medicaid Services had previously suspended Medicare payments to another DME company owned by co-defendant Flashberg, Medisphere, Inc., in or around August 2017.  EZ Fit had a business bank account at JPMorgan Chase Bank, N.A., with an account number ending in 2125 (the "EZ Fit Account"), on which defendant and co-defendant Flashberg were signatories.

Beginning no later than in or around April 2018, and continuing through at least in or around March 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant conspired and agreed with others, including co-defendant Flashberg and co-conspirator Herb Kimble ("Kimble"), to pay illegal kickbacks and bribes to Kimble in exchange for completed prescriptions for

braces and other Medicare required documents (collectively referred to as "doctors' orders") that could be reimbursed by Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

Defendant signed and caused to be submitted to Medicare an enrollment application to submit claims for reimbursement to Medicare, in which he falsely certified to Medicare that he, as well as EZ Fit, would comply with all applicable federal regulations and laws, including that he would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that he would comply with the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

Kimble was the founder, part owner, and manager of Company A and Company B, which operated international call centers in the Philippines.  Kimble obtained patients for the scheme by using an international call center that advertised to Medicare beneficiaries and up-sold the beneficiaries to get them to accept numerous "free or low-cost" DME braces, regardless of medical necessity.

During the course of the conspiracy, defendant and co-defendant Flashberg, through EZ Fit, obtained access to thousands of Medicare beneficiaries by paying at least approximately $1,804,020 in illegal kickbacks and bribes to Kimble, through Company A and Company B, in exchange for the referral of completed doctors' orders for braces that were used to support claims to Medicare for those braces from EZ Fit.  Defendant and co-defendant Flashberg agreed to pay, and paid, a fixed price to Kimble, through Company A and Company B, of approximately $280 to $290 for each brace listed on a doctors' order.

Defendant signed sham contracts and documentation with Kimble's companies, Company A and Company B, to disguise these illegal

16

kickbacks and bribes as payments from EZ Fit to Kimble's companies for marketing and business process outsourcing, among other services. Defendant and co-defendant Flashberg, however, paid Kimble amounts that exceeded the fair market value for legitimate marketing and business process outsourcing services. Defendant and co-defendant Flashberg would not have made these payments to Kimble if they were not receiving doctors' orders for braces from Kimble for EZ Fit in exchange.

In many instances, the braces ordered for these recruited Medicare beneficiaries was medically unnecessary. The doctors who signed the doctors' orders for braces purchased by defendant and co-defendant Flashberg often signed the orders regardless of medical necessity, in the absence of a pre-existing doctor-patient relationship, without a physical examination, and/or frequently based solely on a short telephonic conversation, or without any conversation, with the Medicare beneficiary.

From in or around November 2018 through in or around March 2019, defendant and co-defendant Flashberg, via EZ Fit, submitted and caused the submission to Medicare of at least approximately $2,061,670 in claims for braces, which were procured through the payment of illegal kickbacks and bribes as described above, medically unnecessary, ineligible for reimbursement under Medicare, and/or not provided as represented. Constituting the improper benefit conferred, Medicare paid defendant, via EZ Fit, approximately $1,090,500.30 for those claims. Pursuant to defendant's authorization, Medicare deposited these payments into the EZ Fit Account. These false and fraudulent claims were based upon the doctors' orders for braces that Kimble, through Company A and Company

B, provided to defendant and co-defendant Flashberg in exchange for illegal kickbacks and bribes.

SENTENCING FACTORS

17.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

18.   Defendant and the United States agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. § 2B4.1(a) |
| Loss Amount:<br>  More than $500,000, but<br>  Less than $1.5 million | 14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| Abuse of Position of Trust: | 2 | U.S.S.G. § 3B1.3 |
| Total Offense Level: | 24 | |

The United States will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 6(d) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the

meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 30 below, defendant and the United States agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the United States were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the United States, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the United States would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

19.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.  Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.  Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.  The right to persist in a plea of not guilty.

     b.  The right to a speedy and public trial by jury.

     c.  The right to be represented by counsel – and if necessary have the court appoint counsel - at trial.  Defendant

understands, however, that, defendant retains the right to be represented by counsel — and if necessary have the court appoint counsel — at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

22.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

//

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

23.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction within or below the range corresponding to an offense level 21 and the criminal history calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $1,090,500.30; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24.   The United States agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 21 and the criminal history category calculated by the Court, the United States gives up its right to appeal any portion of the sentence, with the exception that the United States reserves the right to appeal the amount of restitution ordered if that amount is less than $1,090,500.30.

//

1

## RESULT OF WITHDRAWAL OF GUILTY PLEA

2      25.  Defendant agrees that if, after entering a guilty plea

3 pursuant to this agreement, defendant seeks to withdraw and succeeds

4 in withdrawing defendant's guilty plea on any basis other than a

5 claim and finding that entry into this plea agreement was

6 involuntary, then (a) the United States will be relieved of all of

7 its obligations under this agreement, including in particular its

8 obligations regarding the use of Cooperation Information; (b) in any

9 investigation, criminal prosecution, or civil, administrative, or

10 regulatory action, defendant agrees that any Cooperation Information

11 and any evidence derived from any Cooperation Information shall be

12 admissible against defendant, and defendant will not assert, and

13 hereby waives and gives up, any claim under the United States

14 Constitution, any statute, or any federal rule, that any Cooperation

15 Information or any evidence derived from any Cooperation Information

16 should be suppressed or is inadmissible; and (c) should the United

17 States choose to pursue any charge that was either dismissed or not

18 filed as a result of this agreement, then (i) any applicable statute

19 of limitations will be tolled between the date of defendant's signing

20 of this agreement and the filing commencing any such action; and

21 (ii) defendant waives and gives up all defenses based on the statute

22 of limitations, any claim of pre-indictment delay, or any speedy

23 trial claim with respect to any such action, except to the extent

24 that such defenses existed as of the date of defendant's signing this

25 agreement.

26

## EFFECTIVE DATE OF AGREEMENT

27      26.  This agreement is effective upon signature and execution of

28 all required certifications by defendant, defendant's counsel, and a

United States Department of Justice Trial Attorney.

## BREACH OF AGREEMENT

27.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and a United States Department of Justice Trial Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the United States may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing.  If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.  If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.  The United States will be relieved of all its obligations under this agreement; in particular, the United States: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including

charges that the United States would otherwise have been obligated to dismiss; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.    The United States will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

28.   Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of

24

limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

29.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.   Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court; (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence; and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case.  While this paragraph permits both the United States and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement,

this paragraph does not affect defendant's and the United States'
obligations not to contest the facts agreed to in this agreement.

31.   Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty plea, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one — not the prosecutor, defendant's attorney,
or the Court — can make a binding prediction or promise regarding the
sentence defendant will receive, except that it will be within the
statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.   Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the
United States and defendant or defendant's attorney, and that no
additional promise, understanding, or agreement may be entered into
unless in a writing signed by all parties or on the record in court.

//

//

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____        October 1, 2020
ROBYN N. PULLIO                         Date
ALEXANDRA M. MICHAEL
Trial Attorneys
United States Department of Justice
Criminal Division, Fraud Section

_____        9-28-2020
NAJIB JABBOUR                           Date
Defendant

_____        _____
ANDREW D. STOLPER                       Date
Attorney for Defendant
NAJIB JABBOUR

1              <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2       33.   The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 NICOLA T. HANNA
   United States Attorney
9

10 _____       Date
   ROBYN N. PULLIO
11 ALEXANDRA M. MICHAEL
   Trial Attorneys
12 United States Department of Justice
   Criminal Division, Fraud Section
13

14 _____       Date
   NAJIB JABBOUR
15 Defendant

16

17 _____       Date
   ANDREW D. STOLPER
18    Attorney for Defendant
   NAJIB JABBOUR

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          9-28-2020
NAJIB JBBOUG                             _____
Defendant                                Date

1                      CERTIFICATION OF DEFENDANT'S ATTORNEY

2        I am NAJIB JABBOUR's attorney.  I have carefully and thoroughly

3 discussed every part of this agreement with my client.  Further, I

4 have fully advised my client of his rights, of possible pretrial

5 motions that might be filed, of possible defenses that might be

6 asserted either prior to or at trial, of the sentencing factors set

7 forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8 provisions, and of the consequences of entering into this agreement.

9 To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is an informed and voluntary one; and the factual basis set

14 forth in this agreement is sufficient to support my client's entry of

15 a guilty plea pursuant to this agreement.

16

17 ANDREW D. STOLPER               Date
    Attorney for Defendant
18     NAJIB JABBOUR

19

20

21

22

23

24

25

26

27

28